IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
TEXARKANA DIVISION


KEVIN DIXON                                                                    PLAINTIFF


V.                                    CIVIL NO. 4:11-CV-04015


RON STOVALL; CPT. HARTLINE;
CPT. HEINTZLMAN; SGT. GILES;
SGT. BAYLESS; CORP. LAFAYETTE;
JAILER ADAMS; JAILER S. SMITH;
JAILER SHIVERS; ALICE MILLER; and
TONY HANNING                                                                  DEFENDANTS

## REPORT AND RECOMMENDATION OF UNITED STATES MAGISTRATE JUDGE

Plaintiff Kevin Dixon filed this civil rights case pursuant to 42 U.S.C. § 1983.  He proceeds *pro se* and *in forma pauperis*.  Plaintiff has requested a jury trial in this matter.  Pursuant to the provisions of 28 U.S.C. § 636(b)(1) and (3)(2011), the Honorable Susan O. Hickey, United States District Judge, referred this case to the undersigned for the purpose of making a report and recommendation.

Currently before the Court is Defendants, Ron Stovall, Steve Hartline, Golden Adams, Woody Giles, Guy Bayless, Benzel Shivers, Jack Heintzleman, Kelli Lafayette, Tony Hanning, Alice Miller, and Sonyea Smith's Motion for Partial Summary Judgment.  ECF No. 74.  Plaintiff filed a Response to the Motion for Partial Summary Judgment.  ECF No. 82.  After considering all of the briefing the undersigned issues the following Report and Recommendation.

1

## I.      BACKGROUND

Plaintiff originally filed his Complaint in the Eastern District of Arkansas on January 31, 2011.  ECF No. 3.  The case was properly transferred to this Court on February 3, 2011.  ECF No. 5.  In his Complaint, Plaintiff alleges (1) Hartline and Heintzleman placed him in the Super Max Alpha on lock down without a "major or minor diciplinary" (ECF No. 3, p. 5); (2) Hartline, Heintzleman, Bayless, Raggs, Adams, and Smith placed Plaintiff in handcuffs, belly chains, and leg restrictions and escorted him to the R&D area of the MCDC where Heintzleman interrogated Plaintiff (ECF No. 3, p. 6); (3) Hartline, Heintzleman, Giles, Bayless, Lafayette, Adams, Smith, Shivers, and Raggs all knew that Plaintiff did not participate in inciting any riot at the MCDC (ECF No. 3, p. 6); (4) on September 13, 2010, when Plaintiff was escorted out of Max Charlie all of his personal property was left behind (ECF No. 3, p. 7); (5) Plaintiff was then placed in Super Max Alpha, cell six on lockdown without a mattress, blanket, or his personal property (ECF No. 3, p. 7); (6) without his personal property in cell six Plaintiff was unable to shower (ECF No. 3, p. 7); (7) Hartline and Heintzleman had Plaintiff placed in Super Max Alpha cell six still wearing the handcuffs, belly chains, and leg restraints (ECF No. 3, p. 7); (8) Plaintiff had the handcuffs, belly chains, and leg restraints on for seventy-two (72) hours (ECF No. 3, p. 7); (9) Stovall allowed all of this to happen to Plaintiff (ECF No. 3, p. 7); (10) Plaintiff filed a grievance on September 16, 2010 but it was never answered (ECF No. 3, p. 7); (11) each Defendant was deliberately indifferent to Plaintiff by subjecting him to unsafe living conditions violating his Eighth and Fourteenth Amendment rights (ECF No. 3, p. 8); (12) on September 14, 2010, while Plaintiff was housed in Super Max Alpha cell six the water sprinklers went off and Adams would not come to check on Plaintiff (ECF No. 3, p. 8); (13) Raggs and Lafayette watched and made jokes as Plaintiff

2

was soaked by the sprinklers (ECF No. 3, p. 8); (14) Raggs and Lafayette accused Plaintiff of purposely flooding his cell and told him he had to stay in the flooded cell, but Plaintiff alleges he was still restrained at the time and could not have set off the sprinklers (ECF No. 3, p. 9); (15) on September 15, 2010, when Shivers arrived at work, he gave Plaintiff a change of clothes, an indigent hygiene bag, and moved him to Super Max Alpha cell five (ECF No. 3, p. 9); (16) Plaintiff filed grievances with Giles but he failed to respond to any of the grievances (ECF No. 3, p. 9); (17) while in Super Max Alpha cell six in handcuffs, belly chains, and leg restraints Plaintiff was unable to use the toilet, or lay down to sleep (ECF No. 3, p. 10); and (18) while in Super Max Alpha cell six Plaintiff also had no mattress, no blanket, and was forced to wear wet clothes (ECF No. 3, p. 10).[1]

On August 27, 2012, Plaintiff filed a Supplement to Complaint.  ECF No. 55.  In this Supplement, Plaintiff named Sergeant Miller and Officer Hanning as Defendants.  Plaintiff alleges both Miller and Hanning knew that Plaintiff was "placed in confinement, shackled down and without a mat or bedding materials to sleep on."  ECF No. 55, p. 1.  Plaintiff claims that Hanning knew of these conditions because he signed one of Plaintiff's grievances and Miller knew of these conditions because he personally spoke with her on September 15, 2010.  ECF No. 55, p. 1.

Defendants filed their Motion for Partial Summary Judgment on July 1, 2013.  ECF No. 74.  The Court subsequently sent Plaintiff a Notice directing him to inform the Court if he would like assistance, through a questionnaire, in responding to Defendants' Motion for Partial Summary Judgment.  ECF No. 77.  Plaintiff responded notifying the Court that he requested the assistance

---

[1] Plaintiff made additional claims regarding denial of medical care against Nurse Cranford, however, those claims were previously dismissed.  ECF No. 57.  Therefore, the Court will not address them herein.

3

of the Court.  ECF No. 78.  The Court prepared Plaintiff a questionnaire, and he returned the completed questionnaire as his Response to Defendants' Motion on November 12, 2013.  ECF No. 82.

## II.     LEGAL STANDARD

The Court "shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  "[A] genuine issue of material fact exists if: (1) there is a dispute of fact; (2) the disputed fact is material to the outcome of the case; and (3) the dispute is genuine, that is, a reasonable jury could return a verdict for either party."  *RSBI Aerospace, Inc. v. Affiliated FM Ins. Co.,* 49 F.3d 399, 401 (8th Cir. 1995).  The moving party has the burden of showing the absence of a genuine issue of material fact and that they are entitled to judgment as a matter of law, but the nonmoving party may not rest upon mere denials or allegations in the pleadings and must set forth specific facts to raise a genuine issue for trial.  *See Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 256 (1986); *Celotex Corp. v. Catrett,* 477 U.S. 317, 324 (1986).  The Court must view all evidence and inferences in a light most favorable to the nonmoving party.  *See McCleary v. ReliaStar Life Ins. Co.,* 682 F.3d 1116, 1119 (8th Cir. 2012).  However, "[w]hen opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment."  *Scott v. Harris*, 550 U.S. 372, 380 (2007).

## III.    DISCUSSION

As an initial note, the Court points out that Defendants recognize that there will be "material issues of fact that will need to be resolved by a fact-finder as to Plaintiff's claims in

general," however, Defendants move for partial summary judgment on the below Defendants. Accordingly, the Court makes no findings or recommendations on whether Plaintiff's constitutional rights were violated by the events complained of in his Complaint.  Instead, the Court focuses solely on those arguments raised by Defendants in their Partial Motion for Summary Judgment.

A.    Official Capacity Claims

Defendants argue that Plaintiff's Complaint is devoid of any alleged custom or policy of Miller County that resulted in a violation of his constitutional rights.  The Court agrees, however, the Court need not address this argument here because Plaintiff sued the Defendants in their individual capacities only.  ECF No. 3, p. 5.

B.    Defendant Stovall

Defendants argue Stovall cannot be held liable simply because of his supervisory role as the Sheriff of Miller County.  Plaintiff does not allege Stovall had any personal involvement or knowledge of the alleged constitutional violations.

In his Complaint, Plaintiff's only allegation against Stovall is that he allowed Plaintiff to be locked down without due process and restrained in the allegedly unconsitutional conditions of cell six.  In his Response, the Court asked Plaintiff to further explain how Stovall was involved in locking him down on September 13, 2010, leaving him in restraints while he was locked down, and leaving him in the alleged unconstitutional conditions of cell six.  Plaintiff responded: "Defendant Stovall had a duty under Detention Division Policy an Procedures I(A)(1) and (2) to prevent other staff members from imposing corporal punishment upon the jail prisoners and detainees once he became knowledgable of the incidents by making a security round and saw me on the floor restrained."  ECF No. 79, p. 13 (errors in original).

5

A claim of deprivation of a constitutional right cannot be based on a *respondeat superior* theory of liability. *See Monell v. Department of Social Services,* 436 U.S. 654, 694 (1978). "[A] supervisor is not vicariously liable under 42 U.S.C. § 1983 for an employee's unconstitutional activity." *White v. Holmes,* 21 F.3d 277, 280 (8th Cir. 1994); *see also Whitson v. Stone County Jail,* 602 F.3d 920, 928 (8th Cir. 2010) ("In a § 1983 case, an official is only liable for his own misconduct and is not accountable for the misdeeds of his agents under a theory such as respondeat superior or supervisor liability") (internal quotations omitted); *Keeper v. King*, 130 F.3d 1309, 1314 (8th Cir. 1997) ("general responsibility for supervising the operations of a prison is insufficient to establish the personal involvement required to support liability"). "Liability under section 1983 requires a causal link to, and direct responsibility for, the deprivation of rights. To establish personal liability of the supervisory defendants, [Plaintiff] must allege specific facts of personal involvement in, or direct responsibility for, a deprivation of his constitutional rights." *Clemmons v. Armontrout,* 477 F.3d 962, 967 (8th Cir. 2007) (quoting *Mayorga v. Missouri,* 442 F.3d 1128, 1132 (8th Cir. 2006)). In other words, Stovall cannot be held liable here merely because he is the Sheriff of Miller County and holds a supervisory role over those officers personally involved in the incidents complained of by Plaintiff.

A supervisor may, however, "incur liability . . . for their personal involvement in a constitutional violation, or when their corrective inaction amounts to deliberate indifference to or tacit authorization of the violative practices." *Langford v. Norris,* 614 F.3d 445, 460 (8th Cir. 2010) (quoting *Choate v. Lockhart,* 7 F.3d 1370, 1376 (8th Cir. 1993)). Here, Plaintiff makes no allegations that Stovall ordered his lockdown or restraints, however, he does declare under penalty of perjury in his Response that Stovall had personal knowledge of such events because Stovall

6

witnessed Plaintiff locked down in the restraints and the conditions of cell six.

While the Court makes no recommendation regarding whether Plaintiff's constitutional rights were violated by the events and conditions complained of in the Complaint, the Court does find that there are genuine issues of material fact as to whether Stovall knew of such events and conditions and failed to act to correct these conditions—if correction was indeed warranted. *Id.* at 460-61.

Accordingly, Plaintiff's claims against Defendant Stovall should proceed.

C.     Defendants Bayless, Smith, and Shivers

Defendants argue Plaintiff failed to allege Bayless, Smith, or Shivers ordered he be removed from his cell or placed in restraints in a lockdown cell.  Further, Defendants argue Plaintiff failed to state any cognizable claims against Bayless, Smith, and Shivers, and therefore, these Defendants should be dismissed from this action.[2]

In his Complaint, Plaintiff alleges (1) Bayless and Smith placed him in restraints and escorted him to the R&D area to be interrogated by Heintzleman; and (2) Bayless, Smith, and Shivers all knew Plaintiff did not participate in inciting a riot.

In his Response, the Court asked Plaintiff to further  explain how Bayless was involved in locking  him down on September 13, 2010, leaving him in restraints while he was locked down, and leaving him in the wet conditions of cell six.  Plaintiff responded: "Detention Policy and Procedures I(A)(1) and (2) incorporated Defendant Bayless and made him responsible for not stopping the corporal punishment once he became knowledgable of the incident when he made a

---

[2] The Court notes that Defendants did not cite any case law or statute in support of this argument.  Consequently, the undersigned has endeavored to determine whether such a contention has legal support.

7

security round and saw me restrained on the floor."  ECF No. 79, p. 13 (errors in original).

The Court also asked Plaintiff to further explain how Smith was involved in locking him down and the conditions he experienced while on lockdown.  Plaintiff responded: "Defendant Smith had a duty under Detention Policy an Procedures I(A)(1) and (2) to prevent other staff members from imposing corporal punishment upon the prisoners an detainees once he became knowledgable of this incident by making a security round and saw me on the floor restrained." ECF No. 97, p.13 (errors in original).

The Court also asked Plaintiff to further explain how he believed Shivers was involved in locking him down and the conditions he experienced while on lockdown.  Plaintiff responded: "Defedant Shivers had a duty under Detention Policy an Procedures I(a)(1) and (2) to prevent other staff members from impossing corporal punishment upon jail prisoners and detainees once he became knowledgable of the incident by making a security round and saw me on the floor in restaints."  ECF No. 97, p. 14 (errors in original).

In order to establish liability under section 1983, Plaintiff must establish "a causal link to, and direct responsibility for, the depravation of rights" protected by the Constitution.  *Madewell v. Roberts,* 909 F.2d 1203, 1208 (8th Cir. 1990).  Plaintiff does not allege that Bayless, Smith, or Shivers: (1) caused him to be locked down, (2) caused him to be restrained for seventy-two hours, or (3) caused the conditions he complains of while on lockdown.  Nor did Plaintiff claim that Bayless, Smith, or Shivers were responsible for any of these complained of events or conditions.

In his Response, however, when asked how Plaintiff believes Bayless, Smith, and Shivers violated his constitutional rights, Plaintiff claims Bayless, Smith, and Shivers failed to intervene to stop the alleged constitutional violations he was suffering.  While the Eighth Circuit has

recognized a non-supervisory officer's duty to intervene to prevent the use of excessive force, it has not recognized a duty to intervene to prevent other constitutional violations. *Livers v. Schenck*, 700 F.3d 340, 360 (8th Cir. 2012).

Accordingly, Plaintiff has failed to state a cognizable claim under section 1983 against Bayless, Smith, and Shiver and these three Defendants should be dismissed.

D.      Defendants Hanning and Miller

Defendants argue that Plaintiff's allegations against Hanning and Miller all relate to the fact that Hanning and Miller did not intervene once they were informed of the alleged constitutional violations through Plaintiff's grievances after the alleged incidents occurred.  Defendants further argue that knowledge of events after the fact is insufficient to establish liability.[3]

In his Supplement, Plaintiff alleges Hanning was aware of the complained of events and conditions because he signed one of Plaintiff's grievances on September 17, 2010 and Miller knew of the complained of events and conditions because he personally spoke with her on September 15, 2010.  In Plaintiff's Complaint and Response to Defendants' Motion he alleges the complained of events and conditions occurred on September 13 and 14, 2010, and that Shivers removed Plaintiff from these conditions on the morning of September 15, 2010.

In his Response, the Court asked Plaintiff to further explain how Hanning was involved in locking him down and the conditions he complains of while locked down.  Plaintiff responded: "Defendant Hanning had a duty under Detention Policy and Procedure I(A)(1) and (2) to prevent other staff members from impossing corporal punishment upon jail prisoners an detainees once he

---

[3] Again, Defendants provided no legal support for this argument leaving the undersigned with the task of locating and analyzing any applicable law on this issue without the benefit of legal analysis from Defendants.

became knowledgable of the incident by making a security round and saw me on the floor in restraints."  ECF No. 79, p. 14 (errors in original).

The Court also asked Plaintiff to further explain how Miller was involved in locking him down and the conditions he complains of while locked down.  Plaintiff responded: "Defendant Miller had a duty under Detention Policy an Procedures I(A)(1) and (2) to prevent other staff members from impossing corporal punishment upon jail prisoners an detainees once he became knowledgable of the incident by making a security round and saw me on the floor in restraints." ECF No. 79, p. 14 (errors in original).

Just as with Bayless, Smith, and Shivers, in order to establish liability under section 1983, Plaintiff must establish "a causal link to, and direct responsibility for, the depravation of rights" protected by the Constitution.  *Madewell v. Roberts,* 909 F.2d 1203, 1208 (8th Cir. 1990).  Plaintiff does not allege that Hanning or Miller caused (1) him to be locked down, (2) restrained for seventy-two hours, or (3) the conditions of cell six.  Instead, in his Supplement to Complaint Plaintiff only claims Miller and Hanning became aware of the complained of events and conditions after they were remedied by Shivers.

Further, in his Response, when asked how he believes Hanning and Miller violated his constitutional rights, Plaintiff claims Hanning and Miller failed to intervene to stop the alleged constitutional violations he was suffering.  Again, while the Eighth Circuit has recognized a non-supervisory officer's duty to intervene to prevent the use of excessive force, it has not recognized a duty to intervene to prevent other constitutional violations. *Livers v. Schenck*, 700 F.3d 340, 360 (8th Cir. 2012).  Additionally, according to Plaintiff's allegations, by the time Hanning and Miller became aware of the alleged constitutional violations, Shivers had remedied the situation.

10

Accordingly, Plaintiff has failed to state a cognizable claim under section 1983 against Hanning and Miller and these two Defendants should also be dismissed.

E.     Giles

Defendants argue that Plaintiff's only claim against Giles is that he failed to respond to Plaintiff's grievances regarding the events of September 13 and 14, 2010.  Further, Defendants argue that failure to respond to an inmates grievance does not constitute a constitutional violation.

In his Complaint, Plaintiff alleges Giles is the grievance officer.  Plaintiff filed a grievance with Giles regarding his lockdown, restraints, and conditions of cell six, but Giles failed to respond to the grievance.  In his Response, Plaintiff explains that he wrote this grievance on September 15, 2010 but he was unable to get an officer to sign it until September 17, 2010.[4]

The Court asked Plaintiff, in his Response, to further explain how he believed Giles was responsible for locking Plaintiff down and the conditions Plaintiff complains of while locked down. Plaintiff responded: "Defendant Giles had a duty under detention policy and procedures I(A)(1) and (2) to prevent other staff members from imposing corporal punishment upon the prisoners an detainees once he became knowledgable of the incident by making a security round and saw me on the floor restrained."  ECF No. 79, p. 13 (errors in original).

Plaintiff does not have an independent constitutional right to a grievance procedure.  *See Lomholt v. Holder,* 287 F.3d 683, 684 (8th Cir. 2002) (quoting *Buckley v. Barlow,* 997 F.2d 494, 495 (8th Cir.1993)).  A jails failure to process an inmate's grievances, without more, is not actionable under Section 1983.  *Buckley,* 997 F.2d at 495.  Accordingly, Plaintiff's claim that Giles failed to

---

[4] From Plaintiff's explanations in his Response, the Court presumes the date the inmate is able to get an officer to sign a grievance is the day the inmate turns in the grievance form.

11

respond to his grievances, without more, is not a cognizable claim under section 1983.

Further, just as with Bayless, Smith, Shivers, Hanning, and Miller, Plaintiff has no claim for failure to intervene against Giles.  *Livers v. Schenck*, 700 F.3d 340, 360 (8th Cir. 2012). Additionally, according to Plaintiff's allegations, by the time he filed the grievances with Giles, Shivers had already remedied the complained of conditions.

Accordingly, Plaintiff has failed to state a cognizable claim under section 1983 against Giles and this Defendant should also be dismissed.

## IV.    CONCLUSION

Accordingly, I recommend Separate Defendants' Motion for Summary Judgment (ECF No. 74) be **GRANTED** in part and **DENIED** in part.  Specifically, Defendants Bayless, Smith, Shivers, Hanning, Miller, and Giles should be dismissed from this action with prejudice; and Plaintiff's claims against Defendant Stovall shall remain for further resolution.   Further, as Defendants' Motion only moved for dismissal of certain Defendants, Plaintiff's due process and conditions of confinement claims against the following Defendants also remain for latter resolution: Defendants Hartline, Heintzlman, Lafayette, and Adams.

**The parties have fourteen (14)  days from receipt of the report and recommendation in which to file written objections pursuant to 28 U.S.C. § 636(b)(1).  The failure to file timely objections may result in waiver of the right to appeal questions of fact.  The parties are reminded that objections must be both timely and specific to trigger de novo review by the district court.**

**DATED** this **20th day of November 2013.**

/s/ Barry A. Bryant
HON. BARRY A. BRYANT
UNITED STATES MAGISTRATE JUDGE